```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ex rel. PATRICK J. LOUGHREN, )<br><br>Plaintiff, )<br><br>v. )<br><br>UNUMPROVIDENT CORP., et al., )<br><br>Defendants. ) | CIVIL ACTION NO. 03-11699-PBS |

**MEMORANDUM AND ORDER**

March 24, 2009

Saris, U.S.D.J.

Defendants have moved for entry of final judgment on the jury's verdict concerning claimants Jennine and George pursuant to Fed. R. Civ. P. 54(b).  Relator takes no position on the motion.  The Court **ALLOWS** the Defendants' motion, enters final judgment and assesses treble damages and the maximum statutory penalty against the Defendants.

On October 22, 2008, following a four-week trial, the jury returned a verdict finding Unum liable under the False Claims Act for causing the submission of false Social Security Disability Insurance ("SSDI") claims to the Social Security Administration ("SSA") by two claimants, Jennine and George.  The jury also returned a verdict finding Unum not liable for claims submitted by two other claimants, Linda and Randall.  The jury deadlocked concerning the claim filed by claimant Jessica, and the Court

directed a verdict in favor of Unum on the claim of another claimant, Shannon, prior to the jury's deliberations. At this point, Unum's liability as to claims filed by fifty-five additional claimants remains unresolved.

Rule 54(b) provides, "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). This rule "permits the entry of judgment, and thus an appeal, on fewer than all the claims in a multi-claim action." Spiegel v. Trs. of Tufts Coll., 843 F.2d 38, 42 (1st Cir. 1988). In determining whether entry of a final judgment is appropriate under Rule 54(b), the court "must first assess the finality of the disputed ruling." Id. "Once the finality hurdle has been cleared, the district court must determine whether, in the idiom of the rule, 'there is no just reason for delay' in entering judgment." Id. at 43. The Rule 54(b) analysis "entails an assessment of the litigation as a whole, and a weighing of all factors relevant to the desirability of relaxing the usual prohibition against piecemeal appellate review in the particular circumstances." Id.

The "determination of finality is governed by 28 U.S.C. § 1291." State St. Bank & Trust Co. v. Brockrim, Inc., 87 F.3d 1487, 1490 (1st Cir. 1996). A court thus must "consider whether

the [ruling] would count as a final decision under § 1291 in a hypothetical independent case". Id. That is, the court must be sure "that the ruling, at a bare minimum, disposes fully of at least a single substantive claim." Spiegel, 843 F.2d at 43 (quotation marks omitted). If the jury's verdict as to Jennine and George would be a decision that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment" were it not for the remaining claims involving different claimants, then the finality requirement of Rule 54(b) is satisfied. State St. Bank & Trust Co., 87 F.3d at 1490 (quotation marks omitted). Here, once the Court has assessed damages and statutory penalties, the substantive claims relating to Jennine and George will be fully disposed, and there will be nothing more for the Court to do regarding those claims but to execute the judgment. Were there no other claimants to address, this case would be over; in a "hypothetical independent case" involving only Jennine and George, the ruling would count as a final decision under § 1291. As such, the finality requirement of Rule 54(b) is satisfied.

There is likewise no "just reason for delay". In considering whether there is any "just reason for delay"

> [t]he court's role becomes that of a "dispatcher," exercising its discretion to decide which "final" decisions in a multi-claim action should be sent upstairs immediately and which withheld pending resolution of the entire controversy in the district court. The process, tilted from the start against

> fragmentation of appeals, is necessarily case-specific. It entails an assessment of the litigation as a whole, and a weighing of all factors relevant to the desirability of relaxing the usual prohibition against piecemeal appellate review in the particular circumstances.

Spiegel, 843 F.2d at 43 (internal citations omitted). Here, although each claim must be evaluated one-by-one, the Court has already resolved the essential legal issues that undergird all of the claims. Evidence at trial suggested that Unum had a general policy of requiring claimants for Long-Term Disability ("LTD") insurance to file an application for SSDI as soon as they had been disabled for six months, making no separate subjective evaluation regarding whether the claimant actually met the SSA's requirements. (See, e.g., Trial Tr. vol. 14, 38-41, Oct. 15, 2008 (testimony of Unum claim administrator regarding a letter sent to a claimant "based on the time frame she's been out of work" stating that "[s]ince your disability has extended beyond five months, to receive an unreduced disability benefit, we encourage you to apply for Social Security Disability Insurance benefits."); Trial Tr. vol. 3, 122-23, Sept. 24, 2008 (Unum employee testifying that claims handlers had access to a manual instructing them that "[i]f it is anticipated that the disability will be more than a short duration, the claimant will be asked to apply for SSDI."); Trial Tr. vol. 4, 22-23, Sept. 25, 2008 (testimony regarding a document stating that, for at least one major claim site, "[g]enerally, if disabled over six months, SSDI

advocacy pursued," and describing a similar policy at another site); Trial Tr. vol. 4, 64-67, Sept. 25, 2008 (testimony of former Unum employee that Unum "would say to the insured, if they believed that the disability was going to last more than six months, they would tell them that they needed to apply for Social Security Disability. . . . It was just simply a duration analysis" and other eligibility requirements were not considered); Trial Tr. vol. 5, 39-45, Sept. 26, 2008 (testimony of former Unum employee that Unum's policy was to tell insureds that they were required to apply for SSDI with "no assessment with respect to the Social Security requirements" so long as a claimant's "disability was going to extend beyond five months."); Trial Tr. vol. 9, 139-142, Oct. 3, 2008 (testimony of Unum employee that internal review indicated that claimants whose disabilities were expected to last more than six months were told to apply for SSDI).)

While not contesting that they coerced insureds to file for SSDI benefits if they expected their disability to extend beyond six months, Defendants have argued that they cannot be liable under the False Claims Act for knowingly causing claimants to file requests for SSDI benefits so long as the SSA knew of the facts that made such claims false. The Court has rejected this legal argument because claimants must state that they are eligible for SSDI, that is, that they expect to be disabled for

-5-

at least twelve months.  While Unum does not fill in the application itself, Unum threatens to reduce the insureds' LTD benefits by an amount equal to the insureds' potential SSDI benefits if the insureds refuse to apply.  (See, e.g., Trial Tr. vol. 2, 87-90, Sept. 23, 2008.)  There is no possibility that trial of the remaining claims will moot this core legal question. At the same time, without resolution on appeal, the claims of the remaining fifty-five claimants will be tried on the same theory of liability and with the same instructions given to the jury. Given that it took four weeks to try the claims of six claimants, trying the remaining claims will undoubtedly be extremely time consuming.  See Comite Pro Rescate De La Salud v. P.R. Aqueduct and Sewer Auth., 888 F.2d 180, 184 (1st Cir. 1989) (finding Rule 54(b) judgment warranted where "the remaining claims . . . may take considerable time to try" and where "it seems unlikely that a determination of the remaining claims would moot (or lead to settlement of) the issues").

Entry of final judgment would also be in the public interest.  See Quinn v. City of Boston, 325 F.3d 18, 27 (1st Cir. 2003) (stating that the "most important factor counseling in favor of allowing an immediate appeal in this case is the public interest.").  Presumably, were the Court of Appeals to affirm this Court's decision, the Defendants would cease to require LTD insureds to file claims for SSDI benefits without an

Case 1:03-cv-11699-PBS   Document 493   Filed 03/24/2009   Page 7 of 8

individualized assessment of eligibility. Other insurance companies apparently have similar policies. Such a change would not only lighten the SSA's significant workload, but, for Unum's sick and disabled insureds, it would also ease the process of attaining the LTD benefits for which they have paid. As such, there is no "just reason for delay" and entry of judgment under Rule 54(b) is appropriate.

All that remains is to assess damages and penalties against Unum. The jury found that Unum committed two violations of the False Claims Act and that the government had sustained $425 of damages because of each claim, for a total amount of $850. Violators of the False Claims Act are "liable to the United States Government for a civil penalty of not less than [$5,500] and not more than [$11,000], plus 3 times the amount of damages which the Government sustains because of the act of that person . . . ." 31 U.S.C. § 3729(a); 28 C.F.R. § 85.3(a)(9). Generally, treble damages are mandatory. See Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 786 n.16 (2000). Trebling the jury's finding of the Government's damages results in a total damage award of $2,550. As for civil penalties, the evidence at trial indicated that Unum forced insureds to file SSDI claims as soon as they had been disabled for six months, with no regard for the statutory eligibility requirements. Unum's defense seems to be that it should not be required to sort

-7-

through all of these claims, choosing instead to foist the hassle on the SSA.  Unum's method of sloughing its work off on the SSA was to force sick and injured insureds, who had paid Unum good money for their LTD benefits, to apply for SSDI or face a drastic reduction in their LTD benefits, typically their primary income stream.  Although Unum had the contractual right to ask these people to apply for SSDI or face a cut in their benefits if Unum determined that they might qualify for SSDI (see, e.g., Trial Tr. vol. 4, 103-105, Sept. 25, 2008), Unum made no such individualized determination in most cases.  The Court finds Unum's conduct extremely troubling.  As such, I assess the fullest amount of civil penalties allowed by the False Claims Act, $11,000 for each of the two false claims that Unum caused to be filed.

## **CONCLUSION**

The Court **ALLOWS** the Defendants' motion for entry of final judgment under Rule 54(b) [Docket No. 486], and enters final judgment against the Defendants on the jury's verdict concerning claimants Jennine and George, trebles the Government's damages, for a total damage award of $2,550, and assesses Unum $22,000 in civil penalties.

**S/PATTI B. SARIS**
United States District Judge
