Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA, EX REL,)
and PATRICK LOUGHREN,             )
                                  )
            Plaintiffs            )
                                  )
        -VS-                      ) CA No. 03-11699-PBS
                                  ) Pages 1 - 21
UNUMPROVIDENT CORPORATION,         )
                                  )
            Defendant             )


JURY TRIAL - DAY NINETEEN
JURY DELIBERATIONS AND VERDICT

BEFORE THE HONORABLE PATTI B. SARIS
UNITED STATES DISTRICT JUDGE


United States District Court
1 Courthouse Way, Courtroom 19
Boston, Massachusetts
October 22, 2008, 8:55 a.m.


DEBRA M. JOYCE and LEE A. MARZILLI
OFFICIAL COURT REPORTERS
United States District Court
1 Courthouse Way, Room 3205
Boston, MA  02210
(617)345-6787

Page 2

A P P E A R A N C E S:

     PETER B. KRUPP, ESQ., Lurie & Krupp, LLP,
One McKinley Square, Boston, Massachusetts, 02109, for the
Plaintiff, United States of America, Ex Rel.

     KIT A. PIERSON, ESQ., BRENT N. RUSHFORTH, ESQ.,
STUART M. RENNERT, ESQ., and DAVID YOUNG, ESQ.,
Heller Ehrman, LLP, 1717 Rhode Island Avenue N.W.,
Washington, D.C., 20036, for the Plaintiff, Patrick
Loughren.

     GERALDINE G. SANCHEZ, ESQ., MARK E. PORADA, ESQ.,
and WILLIAM J. KAYATTA, JR., and GAVIN G. McCARTHY, ESQ.,
Pierce Atwood, 1 Monument Square, Portland, Maine, 04101,
for the Defendant, UnumProvident Corporation.

ALSO PRESENT:  LAURA KILMARTIN, ESQ.,
               UnumProvident Corporate counsel.

1                    P R O C E E D I N G S

2          THE COURT:  Did you read the most recent status

3    report?

4          MR. PIERSON:  We did, your Honor.

5          THE COURT:  So my question for you all is -- in a

6    way, it's a report of a final deadlock on one of the claims,

7    but also progress on two additional ones.  So -- and a

8    resolution of three.  So I'm trying to figure out whether

9    it's premature to give the Allen charge on the one.  I think

10   it probably is, because if they're deadlocked on the

11   remaining two, I'd have to give it a second time.

12         MR. PIERSON:  That seems right, your Honor.  I

13   mean -- I think both sides agree these guys are working real

14   hard there; they're making progress.  It's a complex case,

15   we all know that.  My point of view would be let them work,

16   you don't want to give the Allen charge twice.

17         THE COURT:  I have it here if anyone wants to see

18   it.  I print it out from the Pattern 1st Circuit jury

19   instructions, and that's what I would intend to give.  I

20   think it would be geared towards criminal, so I'd have to

21   make that adjustment, but otherwise, that's what I would

22   give.

23         All right.  So I'll bring them in, send them out.

24         MR. KAYATTA:  The only thing to ponder about is

25   the suggestion you made yesterday before we throw in the

1    full-blown Allen charge, given how many instructions and how

2    many messages, whether we did sort of two-minute

3    mini-supplemental closing on materiality.

4            THE COURT:  Think about that.

5            MR. PIERSON:  We'll think about it.

6            THE COURT:  In conjunction with an Allen.

7            I don't know, in my view, if everyone agrees, it's

8    appeal proof, and at this point, this makes the fifth

9    time -- fourth or fifth time I've received a request for

10   supplemental instructions or some signal of difficulty with

11   materiality.  An issue, where in fact, was not a focus of

12   anyone's closing arguments or much of a focus during our

13   instruction charge.  It was not something -- we all focused

14   on all sorts of other things.  So it was not a focus of

15   closings -- did either of you even mention it?  I was trying

16   to mention it.

17           MR. PIERSON:  Yeah, we discussed it, I know I

18   discussed it, I know Bill did too.  I went back, reread it,

19   and it was discussed.

20           We'll think about it.  I think it would be

21   important for both sides to consent to it, otherwise there

22   would be an appeal issue.

23           THE COURT:  Absolutely.  I would never do it

24   without both sides' consent.

25           Let's bring the jury in.

1          (Discussion off the record.)

2          THE COURT:  While you're here, you might as well

3    be here, it shows you care and you're not out there laboring

4    in the fields.

5          MR. KAYATTA:  We'd be happy to join them.

6          THE COURT:  Good point.  As we all know, this

7    doesn't resolve the case.  The question is, if you wanted to

8    talk to them afterward, if -- as long as you waived any

9    appeal rights.

10         MR. PIERSON:  Why don't we talk about that after a

11   break.

12         THE COURT:  Although I don't know if I have a room

13   big enough.

14         Just off the record.

15         (Discussion off the record.)

16         (Jury entered the courtroom.)

17         THE COURT:  Thank you.  We read your status

18   report.  I don't think it's asking a question at this point.

19   I think everyone here is very much impressed at hard you're

20   working, and it is, indeed, a complex case.  So thank you

21   very much and we'll hear from you when you want us to.

22         Thank you.

23         Anybody speak about the case?  Anything in the

24   press?

25         Okay, good.  Thank you.

1    (Jury left the courtroom.)

2    THE COURT:  Okay.

3    MR. KAYATTA:  Will we wait for us to initiate or

4    is there a period of time when we --

5    THE COURT:  Goodbye.  I don't think -- they

6    expressly said to Robert they were not going to be asking a

7    question, they just wanted us to know where they were.  So

8    they had basically an hour of deliberation Thursday, by the

9    time the juror got here, probably only about three hours of

10   deliberation on Friday.  I would say from 9:15 until quarter

11   of five yesterday.  So, I mean, they've, at this point,

12   rounding it, their third real day of deliberations.  So

13   they're making headway, and what I'd love you all -- so the

14   three things on your agenda, if there can be agreement on,

15   one:  Whether you want a supplemental closing argument.

16   Maybe what I would do is take the verdict on the ones that

17   they have -- on the one that they don't have, maybe give you

18   a supplemental charge on it.  That's the thought process I

19   have, so it doesn't screw up in any way the ones that

20   they've got the verdict on.  The second would be whether or

21   not you want to talk to them afterwards, and the third,

22   which is I think -- you need to at some point if there's --

23   set up a day for a Daubert hearing on the statistics.

24        The question really is, if it comes back fully for

25   plaintiff, it goes one way; if it goes fully for defendant,

1    the question is whether we need it.  If there's a mixed

2    verdict, I don't know what to do.

3            MR. KAYATTA:  And then do you have any sense of --

4    if we hear nothing from them this morning, they go through

5    lunch, then we just wait until we get another message from

6    them of a deadlock?

7            THE COURT:  Yes.  At that point, I would want to

8    know whether you want to do a little supplemental closing.

9    I think it's a good idea, actually.  I didn't imagine

10   materiality would be a holdup, I thought it would be other

11   things, like knowing.  Maybe that's a holdup, too.

12           MR. PIERSON:  Would it be possible to get a copy

13   of the written instructions that was from the end of the

14   day?  I don't think we got the final printout.

15           THE CLERK:  We could do that, sure.

16           THE COURT:  You all know the standard Allen

17   charge, right?

18           MR. PIERSON:  Yes.

19           THE COURT:  I'm just going to change the burden of

20   proof, basically.

21           MR. KAYATTA:  And the number of zeros.

22           THE COURT:  Yeah, yeah.  Okay.

23           (Recess taken at 9:25 a.m.)

24           (Resumed, 12:50 p.m.)

25           THE COURT:  So you've had an opportunity to see

1    the most recent note.  They have decided five of the six,

2    and that "We're firmly hung on the sixth case."

3          So the question is, I still think the protocol is

4    to read them an Allen charge.  I think I let you go -- they

5    just received their lunch about a half an hour ago, bring

6    them in now, have you leave for an hour, and if they say

7    they're hung, I'm going to take a partial verdict.  Does

8    anyone have a problem with this approach?

9          MR. PIERSON:  I think that's reasonable, your

10   Honor.  I think it might make sense to let them deliberate

11   all day, unless they get to the point where they say --

12         THE COURT:  Well, I'm going to give them the Allen

13   charge, and the next time they come back, it's almost viewed

14   as abusive at this point.  We'll see what they say, see what

15   they say.

16         All right, so I've sort of modified the criminal

17   Allen charge.  Did anyone have a problem on it?

18         MR. PIERSON:  I only had one comment on it, your

19   Honor.  I think it basically looks fine as balanced.  Again,

20   what it tries to do is the very balance, of course, and not

21   sort of tilted on one side.  The last paragraph on the

22   second page talks about the burden of proof and basically

23   says, "This is what happens if the plaintiff doesn't meet

24   their burden of proof."  And just in the spirit of all of

25   this being balanced both ways, if we could add a last

1   sentence that says, "If, however, the preponderance of the

2   evidence shows that the plaintiff has met his burden, the

3   defendant must be found liable," which is just the flip side

4   of what the preceding says, so it's not just pointing in one

5   direction.

6           THE COURT:  Okay.

7           MR. KAYATTA:  The point that I noticed, your

8   Honor, on the first full paragraph on Page 2, I think you

9   just inadvertently left out out of the standard charge.  It

10  actually begins, "On the other hand," comma.

11          THE COURT:  I know.  If you want me to --

12          MR. KAYATTA:  I think what that is, is that's a

13  way of saying those two paragraphs have equal standing.

14          THE COURT:  All right.

15          MR. PIERSON:  That seems reasonable.

16          MR. KAYATTA:  And then adding this additional

17  sentence at the bottom, I mean, the Allen charge formation

18  goes back to at least 1987 in this circuit, and I don't know

19  why we would add language that's not in the charge that's

20  been approved.

21          THE COURT:  Well, why don't I just say, "It's also

22  your duty to --" well, I don't know, it makes sense to do it

23  both ways.

24          MR. KAYATTA:  I mean, this charge has been through

25  the First Circuit three times.  It's been through --

bc814cc2-dd5f-4a1b-9f63-2ba11d23b82a

1    THE COURT:  Yes, but it's a reasonable doubt

2  standard is what it is.

3    MR. KAYATTA:  Yes, it is, but the formulation, in

4  my experience, is always just the standard has changed, but

5  we don't start adding changes.  Why create an issue when we

6  could be guaranteed there would be no issue at all?

7    MR. PIERSON:  What's the issue?  It's just making

8  a parallel.  Your Honor, can I approach and just so you have

9  the language that I proposed?

10    (Pause.)

11    MR. KAYATTA:  Yes, particularly where the burden

12  of proof language was actually -- that was stressed by the

13  circuit in Flannery that that was one of the required

14  elements of an Allen charge.

15    MR. PIERSON:  Well, all we're asking is that it be

16  parallel, that it not point in one direction.

17    THE COURT:  All I'm going to say is, "The

18  plaintiff has a burden to establish, with respect to each

19  claim, each essential element, and to establish that the

20  essential element is more likely true than not true.  If

21  plaintiff has met his burden, you must find in his favor,

22  but if with respect to any element or claim you're not

23  persuaded," that's how I'm going to end it.

24    MR. PIERSON:  That's fine, your Honor.

25    MR. KAYATTA:  And, again, that cuts back on why

bc814cc2-dd5f-4a1b-9f63-2ba11d23b82a

1   the circuit says you include burden of proof in the Allen

2   charge as one of the elements.  It's basically telling them,

3   this is the tie breaker that you can use; and now, by

4   rewriting it that way, it doesn't offer them that

5   assistance.

6           THE COURT:  That's right.  "If plaintiff has met

7   his burden, you must find in his favor on any element or

8   claim. . .you must find in his favor on that element or

9   claim.  But if with respect to any element or claim you are

10  unpersuaded by a preponderance of the evidence, the

11  defendant must be found not liable."  I think that just

12  makes this parallel.

13          MR. PIERSON:  That's fine, your Honor.

14          THE COURT:  That's what I'm going to do.

15          All right, bring them in.  Then you're going to

16  leave for an hour, but you've got to come back.

17          MR. PIERSON:  Okay.

18          THE COURT:  What have you decided on -- I take it

19  no one said anything on closing arguments?

20          MR. PIERSON:  Given where we are, your Honor, I

21  can't see any reason to do that.

22          THE COURT:  Do you agree?

23          MR. KAYATTA:  I think it requires agreement.

24          THE COURT:  What do you want to do with respect to

25  going back and seeing the jury?

bc814cc2-dd5f-4a1b-9f63-2ba11d23b82a

1          MR. PIERSON:  I think we are disinclined to do

2     that.

3          MR. KAYATTA:  I think we would probably be

4     inclined to do it, but I think perhaps after we see the

5     verdict, counsel should talk again.

6          MR. PIERSON:  That's fair, that's fair.

7          THE COURT:  Well, I'm not holding them.  They're

8     going to disappear.

9          MR. KAYATTA:  And are we giving them any sense of

10    the time to report back to you the status this afternoon?

11         THE COURT:  No.

12         MR. KAYATTA:  Okay.

13         THE COURT:  I don't even think I'm going to hand

14    this to them.  I think it's. . .

15         MR. KAYATTA:  Why wouldn't we treat it like all

16    the other instructions?

17         THE COURT:  Because it's easy.

18         THE CLERK:  All rise for the jury.

19         (Jury enters the courtroom.)

20         THE COURT:  Please be seated.  So I read your most

21    recent note, and I give you this charge:

22         I am going to instruct you to go back and resume

23    your deliberations, and let me explain why.  In trials,

24    absolute certainty can neither be expected nor attained.

25    You should consider that you are selected in the same manner

bc814cc2-dd5f-4a1b-9f63-2ba11d23b82a

1    and from the same source as any future jury would be

2    selected.  There is no reason to suppose that this case

3    would ever be submitted to men and women more intelligent,

4    more impartial or more competent to decide it than you, or

5    that more or clearer evidence could ever be produced in the

6    future.  Thus, it is your duty to decide the case, if you

7    can conscientiously do so without violence to your

8    individual judgment.

9           The verdict to which a juror agrees must, of

10   course, be his or her own verdict, the result of his or her

11   own convictions, and not a mere acquiescence in the

12   conclusion of his or her fellow jurors.  Yet, in order to

13   bring seven minds, seven of you to a unanimous result, you

14   must examine the questions submitted to you with an open

15   mind and with proper regard for, and deference to, the

16   opinions of the other jurors.

17          In conferring together, you ought to pay proper

18   respect to each other's opinions, and ought to listen with

19   an open mind to being convinced by each other's arguments.

20   Thus, where there is disagreement, jurors favoring the

21   defendant should consider whether the plaintiff has, in

22   fact, established that each essential element is more likely

23   true than not true when the plaintiff has made such an

24   impression upon the minds of the other equally honest and

25   intelligent jurors who have heard the same evidence with the

1   same degree of attention and with the same desire to arrive

2   at the truth under the sanctions of the same oath.

3          On the other hand, jurors favoring plaintiff ought

4   seriously to ask themselves whether they should distrust the

5   weight or sufficiency of the evidence which fails to

6   persuade the minds of the other jurors that the plaintiff

7   has established that each essential element is more likely

8   true than not true.

9          Not only should jurors in the minority reexamine

10  their positions, but jurors in the majority should do so

11  also, to see whether they have given careful consideration

12  and sufficient weight to the evidence that has favorably

13  impressed the persons in disagreement with them.

14         Burden of proof is a legal tool for helping you

15  decide.  The law imposes upon the plaintiff the burden of

16  proof.  The plaintiff has the burden to establish, with

17  respect to each claim, each essential element, and to

18  establish that the essential element is more likely true

19  than not true.  If plaintiff has not met his burden on any

20  element or claim, you must find in his favor on that element

21  or claim.  But if with respect to any element or claim you

22  are unpersuaded by a preponderance of the evidence, the

23  defendant must be found not liable.

24         It is your duty to decide the case, if you can

25  conscientiously do so without violence to your individual

1  judgment.  It is also your duty to return a verdict on all

2  claims as to which all of you agree, even if you cannot

3  agree on all claims.  But if you cannot agree, it is your

4  right to fail to agree.

5            So I instruct you to go back, resume your

6  deliberations.  I'm telling the lawyers they can leave for

7  an hour to go for lunch, and then they will return.

8            Okay, thank you.

9            THE CLERK:  All rise for the jury.

10            (Jury excused.)

11            MR. KAYATTA:  I might have been the only one, and

12  I'm not sure whether there's a double negative in one of the

13  sentences you read, the sentence that you inserted at the

14  plaintiff's request.

15            MR. PIERSON:  I think that may -- we'd have to

16  read the transcript, but I thought as I was reading along

17  here, it sounded like it may have come out wrong.

18            THE COURT:  It's possible.  "If plaintiff has met

19  his burden on any element, you must find in his favor on

20  that element or claim."  You think I said "not"?

21            MR. PIERSON:  I think it came out wrong.  We'd

22  have to look at the transcript, but --

23            THE COURT:  Well, let me put it this way.  Well,

24  can you go back and check?

25            MR. KAYATTA:  I would suggest, like every other

1    instruction, we simply have that typed up correctly, give it

2    to them, and then if we're wrong, there's no problem.

3            THE COURT:  Let's just look at it right now.

4            (Transcript read back by the Reporter.)

5            THE COURT:  All right, I did throw that in.  So

6    why don't we just X that out and then send that in to the

7    jury.

8            MR. PIERSON:  That seems fine.  It might make

9    sense to communicate to them that they're getting something

10   in writing because they're going to start deliberating on

11   this now.

12           THE COURT:  I'm sure they understood what I meant.

13           MR. KAYATTA:  That's good for you.

14           MR. PIERSON:  Well, we want to get it right, so

15   that's fine, let's send them in something in writing.

16           (Discussion off the record.)

17           THE COURT:  So that will be sent in.

18           MR. PIERSON:  Okay, thank you.

19           THE COURT:  So you should just note for the record

20   that we've sent in the charge.

21           MR. PIERSON:  You wanted us back at 2:00 o'clock?

22           THE COURT:  Yes.

23           MR. KRUPP:  We'll be in the building.

24           MR. PORADA:  Could we get a copy of the charge?

25           THE CLERK:  The revised one?

bc814cc2-dd5f-4a1b-9f63-2ba11d23b82a

1          MR. PORADA:  Yes.

2          THE COURT:  Now, let me just say this:  Is there

3   anyone who needs to be notified before this?  The U.S.

4   Attorney's office asked to be notified.  I guess

5   Mr. Loughren is here.  Anyone from Unum?

6          MR. KAYATTA:  A trade notification to the

7   U.S. Attorney with an explanation of where --

8          THE COURT:  I don't know.  So he's here, the

9   company's here.

10         MR. KRUPP:  Judge, can we wait to see what will be

11  sent in after it gets retyped?

12         THE COURT:  Why?

13         MR. KRUPP:  Because we feel like we missed, you

14  know, whether there was a missing word or not.

15         THE COURT:  Sure.

16         MR. KRUPP:  Thank you.

17         (A recess was taken, 1:07 p.m.)

18         (Charge shown to attorneys.)

19         MR. PIERSON:  That's fine.

20         MR. KAYATTA:  That's fine.

21         THE COURT:  Okay.

22         MR. PIERSON:  Thank you.

23         THE COURT:  All right.

24         (A recess was taken, 1:15 p.m.)

25          (Resumed, 3:40 p.m.)

Page 18

1          THE COURT:  As you know, you've seen that they're

2     still deadlocked on that one claim, so I'm going to take the

3     verdict now.

4          MR. PIERSON:  I understand.

5          THE COURT:  All right.  You all saw the note,

6     right?

7          MR. KAYATTA:  Yes.

8          MR. PIERSON:  We did, your Honor.

9          THE CLERK:  All rise for the jury.

10          (Jury enters the courtroom.)

11          THE CLERK:  Members of the jury, please remain

12     standing.  Everybody else, you may be seated.

13          THE COURT:  You may inquire.

14          THE CLERK:  Mr. Foreman, has the jury reached a

15     unanimous verdict?

16          THE FOREMAN:  We have.

17          THE CLERK:  Would you please return your verdict

18     to the Court.

19          (Foreman complies.)

20          THE COURT:  All right.

21          THE CLERK:  Mr. Foreman, Question 1, did plaintiff

22     prove that Unum violated the False Claims Act with respect

23     to Claimant Jennine?

24          THE FOREMAN:  Yes.

25          THE CLERK:  Question 2, did plaintiff prove that

1   Unum violated the False Claims Act with respect to

2   Claimant Jessica?

3             THE CLERK:  The jury could not reach a unanimous

4   verdict.

5             THE CLERK:  Question 3, did plaintiff prove that

6   Unum violated the False Claims Act with respect to

7   Claimant Linda, A, claim dated October 26, 2004?

8             THE FOREMAN:  No.

9             THE CLERK:  B, claim dated February 20, 2008?

10            THE FOREMAN:  No.

11            THE CLERK:  Question 4, did plaintiff prove that

12   Unum violated the False Claims Act with respect to

13   Claimant George?

14            THE FOREMAN:  Yes.

15            THE CLERK:  Question No. 5, did plaintiff prove

16   that Unum violated the False Claims Act with respect to

17   Claimant Randall?

18            THE FOREMAN:  No.

19            THE CLERK:  With regard to, if you answered "yes"

20   to any of the questions above, what amount of damages,

21   Mr. Foreperson?

22            THE CLERK:  $425 for proven false claim.

23            THE CLERK:  So say you, Mr. Foreperson?  So say

24   you, all members of the jury on your verdict?

25            THE FOREMAN:  Yes.

Page 20

1            THE JURY:  Yes.

2            THE COURT:  Thank you.  You may be seated.

3            On behalf of everyone here, I want to thank you

4    for your really extended service on this very important

5    case.  I make it a practice to go back and talk to jurors

6    about the process, to answer any questions that you might

7    have.  You have gone above and beyond the call of duty, so I

8    will certainly not be insulted if any of you want to leave

9    as soon as we finish the proceedings here.

10            As I mentioned, you can talk about the case with

11   anyone, but please respect the confidential discussions of

12   your fellow and sister jurors.  So at this point, I will

13   stand in recess.

14            THE CLERK:  All rise for the jury.

15            (Jury excused.)

16            THE COURT:  What I suggest is that the question is

17   whether or not you want right now to come up with a date for

18   a Daubert hearing or whether you want to talk?

19            MR. PIERSON:  I think we're prepared to come up

20   with a date, your Honor.  What we were going to propose was

21   sometime after the election so that we can sort of catch our

22   breath, and anytime after that, I think our expert is pretty

23   flexible.

24            MR. KAYATTA:  We've been trying to come up with a

25   date for the last month so that we could check on our

Page 21

1    expert's schedule and check on our schedule.

2            THE COURT:  Well, why don't you within a week let

3    me know.

4            MR. PIERSON:  That's fine.

5            THE COURT:  Come up with a series of dates that

6    you can all do it.  Okay?  Thank you very much.

7            MR. PIERSON:  Thank you.

8            MR. KAYATTA:  Thank you.

9            (Adjourned, 3:45)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               C E R T I F I C A T E

2

3

    UNITED STATES DISTRICT COURT )
4   DISTRICT OF MASSACHUSETTS    ) ss.
    CITY OF BOSTON               )
5

6

7         We, Debra M. Joyce and Lee A. Marzilli, do hereby

8   certify that the foregoing transcript, Pages 1 through 21

9   inclusive, was recorded by us stenographically at the time

10  and place aforesaid in Civil Action No. 03-11699-PBS, United

11  States of America, Ex Rel V. UnumProvident Corporation, et

12  al, and thereafter by us reduced to typewriting and is a

13  true and accurate record of the proceedings.

14        In witness whereof we have hereunto set our hand

15  this 2nd day of May, 2009.

16

17

18

19         /s/ Debra M. Joyce

20         /s/ Lee A. Marzilli
           _____
21          DEBRA M. JOYCE
           LEE A. MARZILLI
22         OFFICIAL COURT REPORTERS

23

24

25